**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | |
|---|---|
| **CHARLES DAVE UNDERWOOD,**<br><br>        Plaintiff,<br><br>v.<br><br>**CITY OF MOULTRIE, GEORGIA, AND MOULTRIE POLICE DEPARTMENT**,<br><br>        Defendants. | Civil Action No. 7:13-CV-39 (HL) |

**ORDER**

Before the Court is the Motion for Summary Judgment (Doc. 15) filed by Defendants City of Moultrie, Georgia ("Moultrie" or "City of Moultrie") and the Moultrie Police Department ("MPD" or "the Department") (collectively "Defendants"). For the reasons stated below, Defendants' motion is granted.

**I.      Summary Judgment Standard**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must evaluate all of the evidence, together with any logical inferences, in the light most favorable to the nonmoving party. Id. at 254-55. The court may not, however, make credibility determinations or weigh the evidence. Id. at 255; *see also* Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of a material fact." Celotex, 477 U.S. at 323 (internal quotation omitted). If the movant meets this burden, the burden shifts to the party opposing summary judgment to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the movant is not entitled to judgment as a matter of law. Id. at 324-26. This evidence must consist of more than conclusory allegations. *See* Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

Under Local Rule 56, the facts listed in the movant's statement of material facts will be deemed admitted as undisputed unless the non-movant denies each specific fact and provides a supporting citation to the factual record. M.D. Ga. L.R. 56. However, even if the non-movant fails to offer adequate objections under Local Rule 56, a court may not accept at face value the movant's depiction of the facts. United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla., 363 F.3d 1099, 1101-02 (11th Cir. 2004). A court must review the record to determine for itself whether the motion for summary judgment is supported by the evidence and that there is no genuine issue of material fact. Id.; see also Reese v. Herbert, 527 F.3d 1253, 1268-69 (11th Cir. 2008).

## II.   Factual Summary

Plaintiff Charles Underwood ("Plaintiff") has not responded to Defendants' statement of undisputed material facts with relevant record citations that would dispute these facts. Therefore, to the extent the record provides support for these facts, they are deemed admitted pursuant to Local Rule 56.

This race-based employment discrimination case arises from Plaintiff's employment with the Moultrie Police Department. In December 2005, the MPD hired Plaintiff, a Caucasian male, as a police officer. Plaintiff initially worked as a patrol officer, but in January 2009, he transferred to the Criminal Investigations Division ("CID") to work as a detective. On November 11, 2013, Plaintiff returned

to being a patrol officer, and he continues to serve as one. While Plaintiff was in the CID, it was commanded by a number of different officers, including Alfonzo Cook ("Cook"), who is African-American, and Sergeant Rob Rodriguez ("Sgt. Rodriguez"), who is Hispanic. (Defendants' Statement of Undisputed Material Facts ("DSMF"), Doc. 16, ¶¶1-5, 8; Deposition of Plaintiff, Doc. 20, pp. 24, 32-37). During the entire time that Plaintiff has been with the MPD, Frank Lang ("Chief Lang") has been chief of the MPD. (DSMF, ¶24; Affidavit of Frank N. Lang, Sr., Doc. 18, ¶3).

Plaintiff's superior officers disciplined him on several occasions while he was in the CID. On August 20, 2010, Cook disciplined Plaintiff for, according to the disciplinary record, failing to investigate a potential sodomy charge in a case involving sex crimes. Cook cautioned Plaintiff to investigate his cases thoroughly to keep from overlooking important details. On November 2, 2011, Sgt. Rodriguez issued a disciplinary letter to Plaintiff for failing to submit a use of force report within the time set by departmental policy. The letter warned Plaintiff that he would be subject to progressively harsher discipline if he continued violating departmental policies. On January 6, 2012, Sgt. Rodriguez gave Plaintiff another letter of reprimand, this time for failing to arrest an individual who was suspected of having committed forgery. According to Plaintiff, the arrest had "slipped through the cracks" because of his heavy caseload. In Plaintiff's deposition, he

admitted that the discipline in August 2010 was not racially discriminatory, and he could not say whether the disciplinary letters in November 2011 and January 2012 were. (Plaintiff Depo., p. 83; DSMF, ¶¶5-16).

On March 2, 2012, Plaintiff, Sgt. Rodriguez, and other CID officers met with the district attorney. During the meeting, Plaintiff asked the district attorney questions that Sgt. Rodriguez perceived as implying that Plaintiff doubted whether the training he had received from the sergeant was correct. Following the meeting with the district attorney, Sgt. Rodriguez assembled the CID staff in his office. The supervisor proceeded to reprimand Plaintiff in a profane, derogatory, and belittling manner for questioning the training that had been provided by the CID. During the upbraiding, Sgt. Rodriguez never used any racial slurs or commented on Plaintiff's race. Plaintiff subsequently submitted a letter to the Department's internal affairs office complaining that Sgt. Rodriguez had used profanity and unfairly humiliated him in front of other officers. Plaintiff's letter did not mention racial discrimination. After an investigation into the incident, Chief Lang issued a disciplinary letter to Sgt. Rodriguez on March 27, 2012. (Id. at 17-26, 83-84; Plaintiff's Complaint Letter, Ex. 5 to Plaintiff Depo.).

After complaining of Sgt. Rodriguez's conduct, Plaintiff endured additional disciplinary actions by the MPD. In April 2012, the MPD received a report that a storage facility had been burgled. The MPD officer who was sent to the facility

found a Wendy's cup, lid, and straw at the scene and brought them back to the police station. Plaintiff was later assigned to investigate the burglary. About a month after the crime, he spoke with the victim for the first time and learned about the Wendy's cup. Plaintiff filled out a form to have the evidence tested for DNA samples by the Georgia Bureau of Investigations ("GBI") crime lab. Unbeknownst to Plaintiff, who never saw the evidence, it was sent to the GBI lab in a plastic bag. Evidence is normally kept in paper bags because plastic bags are more likely to cause contamination. (DSMF, ¶¶27-35; Plaintiff Depo, p. 106).

In June 2012, Plaintiff began investigating the burglary of an apartment. During the investigation, Plaintiff had a telephone conversation with the person whom he suspected had committed the burglary. Plaintiff did not immediately obtain a warrant and arrest the suspect. Instead, during their telephone conversation, Plaintiff invited the individual to come to the police station to relate the suspect's version of the events. Nothing the suspect could have said would have changed Plaintiff's conclusion about who had committed the burglary. (DSMF, ¶¶36-40).

In May 2012, Plaintiff was assigned to investigate the theft of a bulldog from Richard Bachelor ("Bachelor"). On June 21, 2012, Bachelor filed a formal complaint with the MPD stating that Plaintiff had never contacted any of the individuals whom Bachelor had named as likely culprits. Bachelor was eventually

able to recover the dog on his own, but even after additional information was provided to Plaintiff, the investigation into the theft languished. Bachelor's complaint charged that Plaintiff had failed to investigate the theft because the possible thief was the grandson of a former MPD officer. Sgt. Rodriguez was ordered to investigate the grounds for Bachelor's complaint, and he determined that the complaint was justified. Upon being questioned by Sgt. Rodriguez, Plaintiff admitted that he had put little effort into finding the dog. (Id. at 41-51).

Later on June 21, Sgt. Rodriguez provided a memorandum to Chief Lang recommending that Plaintiff be suspended for three to five days. The memorandum laid out a troubling pattern concerning Plaintiff's "ability to adequately perform his duties as an investigator." (Id. at 52-53, 55). In support of the recommended suspension, Sgt. Rodriguez detailed Plaintiff's performance as an investigator and the resulting disciplinary actions that have been described in this Order. On July 10, 2012, based on Sgt. Rodriguez's memorandum, Chief Lang suspended Plaintiff without pay for one day. Plaintiff testified, in his deposition, that he could not say whether this suspension was based on his race or whether it was discriminatory. (Id. at 54, 56-57).

On Saturday, July 14, 2012, a convenience store clerk informed the MPD that she had been robbed by Reginald Wright ("Wright"). Accordingly, MPD officers arrested Wright. Although Plaintiff was the investigator on call at the time

of the reported robbery, he did not visit the convenience store. On July 15, Plaintiff and Officer Freddie Williams ("Williams") interviewed Wright, who denied that a robbery had occurred. Williams, an African American, had only recently been transferred to the CID and was still being trained. Following the interview with Wright, Williams went to the convenience store where he spoke with the clerk and reviewed the store's video recording of the alleged robbery. Williams concluded from his investigation that a robbery had not occurred, so he and Plaintiff decided not to seek charges against Wright. (Id. at 58-65).

The MPD does not allow officers to simply release suspects from jail. Before a suspect may be released, the officers on the case are required to obtain an arrest warrant and then dismiss it. Williams and Plaintiff could have gotten an arrest warrant for Wright on July 15, but they chose not to do so. Plaintiff told Wright to get a warrant on Monday, July 16. However, on Monday Plaintiff suffered health problems and was unable to confirm if Williams obtained the warrant on Wright. In the event, Williams did not get the warrant until Monday afternoon. Wright was released later that day, meaning that he had been held in the Moultrie jail for more 25.5 hours after it was decided that he would not be charged with robbery and for more than 48 hours in total. (Id. at 66-71, 74-75).

On July 20, 2012, Sgt. Rodriguez wrote a memorandum expressing concerns over how Plaintiff had handled Wright's arrest and relating the officer's

history of deficient work. According to Sgt. Rodriguez, as the chief investigator on the robbery case, Plaintiff should have visited the convenience store; he and Williams should have obtained an arrest warrant for Wright the same day that they interviewed him; and Wright should have been released once the decision not to charge him was made. Sgt. Rodriguez was afraid that the City of Moultrie might be liable for wrongful incarceration because Georgia law prohibits holding a suspect for more than forty-eight hours in the absence of an arrest warrant. Because Chief Lang was attending an out-of-town conference, Deputy Chief Joseph Lancos ("Lancos") handled the disciplinary matter. On July 27, Lancos suspended Plaintiff for three days. Following Plaintiff's appeal, Moultrie's city manager upheld the suspension. (Id. at 72-77; Lang Aff., ¶¶24-26).

On March 29, 2013, Plaintiff filed suit in this Court against the City of Moultrie and the MPD. Plaintiff alleges that Defendants are guilty of racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981(a). According to the Complaint, Plaintiff received a number of frivolous, unmerited disciplinary actions because of his race, and, after he reported the discrimination, he was subjected to further discipline. Plaintiff contends that he reported the unlawful employment practices when, through the letter to internal affairs and in informal conversations, he

complained of Sgt. Rodriguez's behavior in humiliating him. (Complaint, Doc. 1, ¶¶5, 12, 16-19; Plaintiff Depo., pp. 58-63).

## III.   Legal Analysis

The motion for summary judgment is granted because the undisputed factual record shows that Defendants are entitled to judgment as a matter of law.

### A.   Claims against the Moultrie Police Department

The motion for summary judgment by the MPD is granted because, under Georgia law, police departments are not entities that are capable of being sued. *See* Smith v. City of Unadilla, 510 F. Supp. 2d 1335, 1342 (M.D. Ga. 2007) (citing Dean v. Barber, 951 F.2d 1210, 1214 (11th Cir. 1992) and Lovelace v. Dekalb Cent. Prob., 144 F. App'x 793, 795 (11th Cir. 2005)).

### B.   Discrimination Claim against the City of Moultrie

Summary judgment is also granted on the discrimination claim against the City of Moultrie. Alleging that the City of Moultrie is liable for racial discrimination, Plaintiff asserts claims against it under both Title VII and § 1981. When Title VII and § 1981 claims are based on the same set of facts, they are subject to the same legal standard and, thus, may be analyzed together. Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998). The record is unclear as to whether Plaintiff's discrimination claim is based on a hostile work environment or

disparate treatment theory, but the claim fails under either theory because there is no evidence of racial discrimination.

Any claim that Plaintiff suffered a racially hostile work environment must be dismissed because there is no evidence that he was harassed because of his race. The elements of a hostile work environment claim are, among other things, that the plaintiff "was subjected to unwelcome racial harassment" and that "the harassment was severe or pervasive enough to … create a discriminatorily abusive working environment." Adams v. Austal, U.S.A., L.L.C., 754 F.3d 1240, 1248-49 (11th Cir. 2014). A plaintiff must show that a reasonable person would have viewed the work environment as hostile. Id. at 1249. "[O]nly conduct that is 'based on' a protected category, such as race, may be considered in a hostile work environment analysis." Jones v. UPS Ground Freight, 683 F.3d 1283, 1297 (11th Cir. 2012). The Court is not convinced that a reasonable person in Plaintiff's position would have perceived the MPD as an abusive working environment, but certainly nothing indicates that any harassment he did experience was racially based.

The discrimination claim would also be dismissed even if Plaintiff had alleged that he was subjected to disparate treatment. To prove disparate treatment in violation of Title VII, a plaintiff must show, among other things, that his employer treated "similarly situated employees outside [his] protected class

more favorably than [he] was treated." Burke-Fowler v. Orange Cnty., Fla., 447 F.3d 1319, 1323 (11th Cir. 2006) (per curiam). Because this is a race discrimination claim, the protected class in question is Plaintiff's race, Caucasian. For someone to be a similarly-situated employee to Plaintiff, "the quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." Id. (quotation and citation omitted).

Plaintiff has failed to produce a non-Caucasian officer in the MPD who engaged in similar conduct to his without being comparably disciplined. In his deposition, Plaintiff could only name Williams as a non-Caucasian officer who had performed somewhat similarly to himself. However, Plaintiff admitted that he did not know whether Williams had violated departmental policies prior to the Wright incident, as Plaintiff had done, or whether Williams was ever disciplined for how the Wright arrest was handled. Williams is not a proper comparator, but even if he were, there is no evidence that he received more favorable treatment from the MPD than Plaintiff did. The discrimination claim is dismissed.

### C. Retaliation Claim against the City of Moultrie

The retaliation claim must also be dismissed under the summary judgment standard. Title VII, as amended, prohibits employers from retaliating against employees who have "opposed any practice made an unlawful employment

practice by [Title VII]." 42 U.S.C. § 2000e-3(a); *see also* Dixon v. The Hallmark Cos., 627 F.3d 849, 856-57 (11th Cir. 2010) (providing the elements of a Title VII retaliation claim). Nothing in the record suggests that Plaintiff opposed an employment practice by the MPD that was violating Title VII. Although he did complain about how Sgt. Rodriguez was treating him, there is no evidence that Sgt. Rodriguez's behavior was unlawful under Title VII. The retaliation claim is dismissed.

## IV. Conclusion

Based on the foregoing reasons, the Motion for Summary Judgment (Doc. 15) by the City of Moultrie and the Moultrie Police Department is granted, and this case is dismissed.[1]

**SO ORDERED**, this the 10th day of September, 2014.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

scr

---

[1] This is now the fifth case in which the Court has recently granted summary judgment on Title VII claims Plaintiff's counsel Jody Weathers has filed on behalf of current or former MPD officers. There is no evidence that Mr. Weathers has deposed a single person in these lawsuits, and the briefs he files in opposition to summary judgment are typically two–three pages in length. This will not do. Mr. Weathers has a professional responsibility under Federal Rule of Civil Procedure 11 to refrain from making frivolous arguments to the Court and wasting valuable time and resources. He is required to make reasonable inquiry into the basis of his client's case before filing suit and, if the client later provides evidence that no discrimination occurred, drop the claim. Neither Title VII nor the federal rules recognize speculation as evidence of discrimination.